**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case Number: 23-mj-327** |
| v. | : | |
| | : | |
| | : | |
| **MICHAEL EVERTS,** | : | |
| | : | **Detention Hearing:  December 4, 2023** |
| Defendant. | : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its request that defendant Michael Everts be detained pending trial of this matter pursuant to 18 U.S.C. § 3142(f)(1)(A).  Mr. Everts is charged with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), on three separate occasions in October and November of 2023.  Distribution of Child Pornography is a crime of violence and there is no condition or combination of conditions that will reasonably assure the safety of children in the community – both in the physical world and online – if Mr. Everts is released.  As detailed below, an analysis of the factors set forth in 18 U.S.C. § 3142 leads to the conclusion that detention is the only way to protect children in the community and to ensure the defendant's future appearance.

## FACTUAL BACKGROUND

On July 25, 2023, a representative of the National Center for Missing and Exploited Children ("NCMEC")[1] received a report regarding attempted child exploitation on an online

---

[1] The National Center for Missing and Exploited Children (NCMEC) is a non-profit 501(c)(3) organization that serves as a national clearinghouse and resource center for families, victims, private organizations, law enforcement, and the public on missing and sexually exploited children.

application from an employee of Sniffies.[2]  The Sniffies employee reported that the Sniffies user #64b46faa0433caaee2516a09 had "before suspension…actively [sought] underage."

Sniffies provided transcripts of the reported user's messages to other users which included the following,

1.  *That's hot. Cheating is kind of hot. Cheating makes me wanna go on face book and look at beach pics of people's kids*

2.  *Wow. Yeah 10 to 12 yr old cock is beautiful*

3.  *I wish. Youngest was 16. Love their tiny hairless child cocks. U?*

4.  *Nice man. Remove 500 from any number I write Yeah there's a boy that I first noticed him when he was 508. That's younger than I like, but I noticed him. When he was 510 and 511 he was hottest. I've kept track of him on his mom's facebook...he's like 515 now but still hot. But I wanted to most see him nude when he was 510 and 511*

5.  *If u have tele* [the Telegram application]*, I'm @ethaneffex*

Sniffies advised that the account is registered to a user who provided an email address of verashula@gmail.com and accessed the account from an internet protocol (IP) address of 166.198.21.127 on July 25, 2023.  Sniffies also reported that the user's estimated location on July 25, 2023, was in Silver Spring, Maryland.

---

NCMEC operates a CyberTipline and Child Victim Identification program.  Through the Cyber Tipline, Internet Service Providers (ISP), Electronic Service Providers (ESP), and individual persons may notify NCMEC of online child sexual abuse images.  NCMEC makes information submitted to the CyberTipline and Child Victim Identification Program available to law enforcement agencies.

[2] Sniffies is an interactive, map-based hookup web app for gay, bisexual, and bicurious guys. The website features a map that shows the approximate locations of nearby users who are currently or recently online, as well as active groups and popular meeting spots in the area.

NCMEC subsequently forward the information to law enforcement and agencies in both Maryland and the District of Columbia participated in the investigation.  To identify the Sniffies user described above, law enforcement issued a number of administrate subpoenas.  In response to a subpoena from law enforcement in Maryland, Google advised that the account verashula@gmail.com is linked to an AT&T phone number of 202-255-7814.  In turn, AT&T then provided information in response to a subpoena indicating that the AT&T subscriber for 202-255-7814 is Michael Everts of XXXX Q Street #XXX in Northwest, Washington, D.C. 20009.

On September 26, 2023, a Task Force Officer (TFO) with the Federal Bureau of Investigation-Metropolitan Police Department Child Exploitation and Human Trafficking Task Force (FBI-MPD CEHTTF) was assigned to this investigation.  After issuing additional subpoenas, the TFO learned that the email address of verashula@gmail.com had a recovery email of iphonefit@gmail.com and a recovery phone number of 202-255-7814, which is registered to AT&T Wireless.  Google additionally reported that the Google account of iphonefit@gmail.com is registered to a user with a name of Michael EE, a recovery email of everts@fit-dc.com, and a recovery phone number of 202-255-7814.  Additionally, the account had been linked to Google Pay with a financial instrument linked to Michael Everts with a billing address of XXXX Q Street #XXX in Northwest, Washington, D.C., 20009.

On the same date, and to further the investigation, the TFO began working in an online covert capacity out of an FBI satellite office in the District of Columbia.  In his capacity as an online covert employee (OCE), he then contacted Telegram user @ethaneffex, based upon the information in the Sniffies messages that had been provided to law enforcement.  The OCE had the following initial conversation with the user,

OCE:  What's up, 35 dad here.

@ethaneffex:  Nice. 39.  How old is your son? :)

OCE:  About to turn 11.

@ethaneffex:  Hottest age ever…I fell in love with my neighbor a few years back when he was 9sih.  His hottest age was 10/11…sadly he's like 15 now…still hot tho.  Your boy athletic and hot?

@ethaneffex indicated that his neighbor's name is "[Minor 1]"[3] and reported that he "secretly film him with my phone on the playground mostly" and advised, "…The best violation was when he was once in my house.  Prob9 yes old.  He was leaning forward and there was a gap in the back of his jeans.  I could see way down and see his beautiful underwear shaped over his beautiful child buns."  @ethaneffex then forwarded the OCE numerous non-explicit images of a young boy who he claimed to be Minor 1, including an image of Minor 1 near the water and without his shirt on.  The conversation continued:

OCE:  Are you totally fantasy or any real interest?

@ethaneffex:  Depends. Total fantasy, anything goes...force or otherwise... for reality, I've fucked a 16 yr old, and if I had the chance I'd play with as low as 12....as long as the child wasn't a virgin, I knew I wouldn't get caught, and the child was the pursuer.. I'd suck a 10yr old and up under same situation...I just don't want to cause pain or distree in a boy (in reality)

You?

When did you start playing with Jr?  No judgement….

The OCE then indicated he had been sexually abusing his fictitious son since "he was very little."

---

[3] Law enforcement has identified "Minor 1" as a real child and, thus, has removed this child's name to protect the privacy of the child.

@ethaneffex reported, "Amazing…Sorry if I have gaps in response…at work…Is his penis super tiny?"

The OCE asked @ethaneffex, "Do you perv to anything good?  I never get to see the new stuff…"  @ethaneffex advised, "I've had luck finding guys on grindr that are at a hotel and have kiddie porn..everyone in a while…I usually don't keep anything other than the Facebook pics I swipe of [Minor 1] and other local kids, neighbors, my friends kids"

On September 27, 2023, at approximately 7:14 am, @ethaneffex forwarded four photographs of prepubescent boys.  Three of the photographs displayed prepubescent and pubescent males wearing brief style underwear and the fourth photograph displayed a prepubescent male wearing pink in color underwear with an adult male standing behind him with an erect penis appearing to be inserted into his anus.  The image appears to be a morphed photograph of two images put together to create the appearance that a child is being penetrated by an adult male's erect penis.  On the same date, @ethaneffex sent the OCE two voice messages in which he continued to describe his sexual interest [Minor 1].  *See* Gov't Detention Exhibits 1 and 2 (audio recordings).[4]

The OCE and @ethaneffex continued to communicate via Telegram and @ethaneffex continued to forward images and videos of prepubescent and pubescent males to the OCE. @ethaneffex specifically forwarded photographs of two boys and indicated one of the boys was "[Minor 1]" and the other was "[Minor 2]."  @ethaneffex continued to report that [Minor 1] is a family friend's child and [Minor 2] is a child that he sees at wrestling practice.

---

[4] The United States intends to submit all detention exhibits separately and under seal for the purpose of protecting the identity and privacy of any minors referenced in said exhibits.

@ethaneffex advised regarding [Minor 2], "…I really had opportunities to try and touch [Minor 2]'s tiny dick at wrestling practice.  It was a bit of torture trying to resist.  Paranoia helps ha."  @ethaneffex then forwarded a photograph of what appears to be a young boy wearing a blue in color wrestling outfit.  The photograph was taken looking up at the child from the ground.

During the course of the chat on September 27, 2023, @ethaneffex sent two additional voice recordings.  In one, he continues to discuss his attraction to Minor 1.  *See* Gov't Detention Exhibit 3.  In the other, he describes his fantasy of sexually abusing Minor 1 and also describes how, when previously working as assistant coach at a wrestling club, he enjoyed seeing the children's "little cocks…up close" during wrestling matches.  *See* Gov't Detention Exhibit 4.

@ethaneffex advised he was interested in seeing the OCE's purported son and asked, "Did u get so hard showing him off?"  The OCE indicated that he had "…loved it" and stated, "It's just tough finding people I can trust."  @ethaneffex responded, "I get it.  That's why I don't push too hard.  I think o[n]ce you're clear that I'm a reliable pedo, it's will be obvious we both care a lot about discretion and secrecy ha.  Especially since I'm showing you the two local boys I wanna plow the most, [Minor 2] and [Minor 1].  I wanna take them to a bathhouse and watch 20 guys fuck their tight pink child holes, rough…no condoms allowed."

@ethaneffex then forwarded four photographs of a Caucasian adult male with one photograph showing the face of the adult male and indicated to the OCE that the photographs were of him.  The face of the adult male in the image is consistent with the known appearance of Michael Everts.

As the chat progressed, the OCE indicated that he resided in the Washington, D.C. area and @ethaneffex reported that he also lives in the area.  @ethaneffex reported that he would be

interested in meeting with the OCE and reported, "My favorite ages are 9 to 12ish. Lots of hot kids in the NW area of DC."

The chat continued throughout October and November of 2023 with @ethaneffex continuing to share about his interest in pedophilia, as well as his sexual interest in specific children in his social circle. On October 11, 2023, @ethaneffex chatted: "I get it...yeah, I need vivid imagination to get me worked up. One of my fav things is looking at Facebook friends who post pics of their kids, and jaklcking to their kids."

As described below, @ethaneffex continued to forward numerous photographs of prepubescent and pubescent boys nude and exposing their genitals. Additionally @ethaneffex forwarded more photographs of children he indicated he knew and photographs of children wrestling with one and another. @ethaneffex also forwarded the following image and video to the OCE on October 24, 2023,

1. An image of a prepubescent boy's lower body photographed from the back completely nude with his anus exposed to the camera. An adult male's erect penis is observed pressed against the child's left buttocks.

2. A video of a young boy who appeared to be in the early stages of puberty and was completely nude while on all fours on a bed. The boy is being penetrated by the penises of two adult males in the mouth and in the anus and one of the adult males removes his penis from the child's mouth and then masturbates over his head.

The OCE and @ethaneffex discussed the sexual abuse of the OCE's purported son, and @ethaneffex provided suggestions for how the OCE should dress the fictional child. @ethaneffex also indicated that he was interested in sexually abusing the child and discussed specific sexual acts was interested in engaging in with the child. The OCE indicated he intended to sexually abuse

the child on October 24, 2023, and @ethaneffex messaged the OCE on October 25, 2023, "U get some nice pics and vids last night?"

On November 9, 2023, @ethaneffex messaged the OCE, "I wish we knew a pedo priest that would invite us over to fuck tiny alter boys all together" and then forwarded the following two videos,

1. A video of an adult male and prepubescent boy laying on a piece of furniture covered in a white sheet. The adult male is kissing the boy while masturbating his own penis and then pulls down the child's pants. The adult male then inserts child's penis into his mouth.

2. A video of an adult male walking in front of numerous prepubescent and pubescent males standing in a line outside wearing shorts and underwear. The adult male walks in front of the boys and touches their stomachs then touches their covered genitals.

On November 14, 2023, @ethaneffex messaged the OCE, "Do you have 0 doubts I'm an actual pedophile?" and the OCE advised, "I always have doubts….I'd feel 100% if you sent some real fucked up vids lol." @ethaneffex asked the OCE, "What happens when u feel 100%?" and the OCE indicated, "Oh…things 😈."

@ethaneffex altered the settings of the Telegram chat with the OCE and set the chats "self-destruct timer to 1 hour[5]." @ethaneffex then forwarded the following video,

1. A one (1) minute and thirty-two (32) second long video that shows two prepubescent males laying on a bed. One of the boys is nude from the stomach down with his penis exposed

---

[5] The Telegram messaging application allows users to configure the messenger to delete messages from the chat log after a specific amount of time has passed. Telegram refers to this feature as a "self-destruct timer."

to the camera.  The second boy is observed manipulating and masturbating the first boy's penis which is erect.

@ethaneffex advised after sending the video, "Now it's 100% verified.  I'm a pedophile. I sent kiddie porn."  The OCE later messaged @ethaneffex, "Also you don't trust me anymore lol. Self destruct button!!!!!"  @ethaneffex responded by stating, "Oh that was just for something else…a picture maybe?  Oh that was because I sent the child porn…To protect us both."

On November 27, 2023, at approximately 3:53 pm, the OCE asked @ethaneffex if he would be "down for coffee tomorrow?  Just to meet.  Say hi?"  @ethaneffex advised, "I'd have to prob do it last minute.  Also have to think it thru.  I sent kiddie porn to you, so I'm already outed as a pedophile, so for me there's that bit of risk.  Gotta think it thru."

On November 28, 2023, at approximately 10:49 a.m., @ethaneffex agreed to meet the OCE outside of the Apple Store at 801 K Street Northwest, Washington, D.C. at approximately 12:30 p.m.  @ethaneffex advised after agreeing to meet, "Yeah.  I've got one idea to better set it up too, to give us both an out/deniability if we panick…"  @ethaneffex again altered the settings of the Telegram messenger to "self-destruct timer to 1 hour" and sent the following message, "Either email or text my office # or email "Found your number/Email online.  Can we set up a consultation to discuss fitness training" I'll respond that we can., and you say that time and location.  Then it means we are meeting for a professional reason…of course we will meet and let the conversation drift to where it needs to go.  What u think?  The OCE indicated that was a "smart move" and @ethaneffex provided a phone number of 202-255-7814.  The OCE recognized the phone number as a number associated with Michael Evert and linked to the Google account verashula@gmail.com.

The OCE messaged the phone number and received the following response, "That would be great. Thank you for your interest. When would be a good time to meet? Would this be your first time working with a trainer? Best, Mike."

At approximately 12:30 p.m., the OCE observed an adult male in the front of 801 K Street Northwest who appeared to be Michael Everts. The OCE waved to the individual and they approached each other. The OCE greeted the male who introduced himself as Mike. The OCE immediately recognized the male to be Michael Everts.

The OCE and Everts walked in front of 801 K Street Northwest and discussed Everts' fitness business and then discussed their level of interest in pedophilia. During the course of this conversation the OCE provided a hand signal to an arrest team and Everts was subsequently taken into custody by members of the Federal Bureau of Investigation Child Exploitation and Human Trafficking Task Force.

## APPLICABLE LEGAL STANDARD

The defendant is charged with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), a crime of violence. 18 U.S.C. § 3156(c) defines a "crime of violence" to include violations of Title 110, under which § 2252(a)(2) falls. Further, § 2252(a)(2) gives rise to a rebuttable presumption of detention pursuant to 18 U.S.C. § 3142(e)(3)(E), where it is to be *presumed* that no combination of conditions will protect the community or assure the defendant's return. § 3142(e)(3)(E). This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence

that he will not flee or endanger the community if released"); *see also United States v. Hir,* 517 F.3d 1081, 1086 (9th Cir. 2008).  Even if the defendant does not pose a flight risk, danger to the community by itself is a sufficient reason to order pretrial detention.  *United States v. Salerno*, 481 U.S. 739, 755 (1987).

In determining whether the defendant has overcome that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  *See* 18 U.S.C. § 3142(g).  Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the § 3142(g) factors.  *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1983) ("Use of that word [rebutted] in this context is somewhat misleading because the rebutted presumption is not erased.  Instead, it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g).").  As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as a factor because it is not simply an evidentiary tool designed for the courts.  Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial."  *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010) ("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

## ANALYSIS

Defendant Everts poses profound danger to children in our community and there are no conditions short of detention that will protect children – both online and in the real world – from

the defendant.  For the reasons that follow, the United States submits that that the defendant cannot rebut the presumption that he shall remain detained, as there is no condition or combination of conditions that will reasonably assure the safety of any other person and children in the community.

### A.    Nature and Circumstances of the Charged Offense

The defendant is a self-proclaimed "pedophile" who is alleged to have distributed child pornography on three separate occasions while, at the same time, sharing numerous non-explicit images of real children in his social circle and fantasizing about the specific sexual acts that he wanted to perform while sexually abusing those same children.  The nature and circumstances of his offense are of the utmost seriousness and weigh heavily in favor of detention.

As described above at length, the defendant came to the attention of law enforcement after an employee of the application Sniffies reported that a user – later identified as defendant Everts – was actively seeking "underage."  During the investigation, an OCE contacted the user via the application Telegram, and engaged in an approximately two-month chat conversation with Everts in which they discussed their apparent shared sexual interest in little boys.  During that two-month conversation, Everts engaged in conduct that makes his danger to children abundantly clear.  First, as charged in the complaint, he allegedly distributed child pornography on three sperate occasions, sending the material to someone whom he believed had a sexual interest in children.  In fact, after allegedly distributing child pornography on November 14, 2023, he gleefully wrote: "Now it's 100% verified.  I'm a pedophile.  I sent kiddie porn."

In addition, throughout the two-month chat conversation with the OCE, Everts repeatedly encouraged the OCE to sexually abuse his own fictitious child and discussed specific sexual acts that he wanted to experience at the child's expense.  He also suggested to the OCE various non-explicit images of the child that he was interested in having the OCE create, including images of

the fictitious child modeling underwear.  Throughout the entire conversation, he demonstrated zero concern for a child who he had reason to believe was being sexually abused and, instead, exhibited excitement and sexual arousal at the suggestion of a future sexual encounter with this child.

Further, in the context of the explicit chat conversation, Everts forwarded numerous non-explicit mages to the OCE of actual children in his social circle, including Minor 1 and Minor 2. On October 11, 2023, he noted, "I get it...yeah, I need vivid imagination to get me worked up. One of my fav things is looking at Facebook friends who post pics of their kids, and jaklcking to their kids."  On multiple occasions he discussed his sexual interest in actual children that he had encountered in his life, particularly emphasizing his desire to sexually abuse Minor 1 and noting that he had surreptitiously recorded Minor 1 at the playground in the past.  Not only did he send photos of these children to someone whom he had reason to believe also had a sexual interest in children, but he sent multiple voice messages to the OCE reiterating his sexual interest in Minor 1 – as well as in Minor 2 and other unknown minors – and describing the specific sexual acts he wanted to engage in with these minors.  *See* Gov't Detention Exhibits 1-4.

Only amplifying his danger to children, Everts then bragged about having previously engaged in sex with a minor and his willingness to sexually abuse a child as young as 10 years old. On September 26, 2023, the very first day that he began chatting with the OCE, Everts described what he viewed as "fantasy" versus what he viewed as "reality," saying:

> Depends. Total fantasy, anything goes...force or otherwise... for reality, I've fucked a 16 yr old, and if I had the chance I'd play with as low as 12....as long as the child wasn't a virgin, I knew I wouldn't get caught, and the child was the pursuer.. I'd suck a 10yr old and up under same situation...I just don't want to cause pain or distree in a boy (in reality)

Finally, throughout his interaction with the OCE, Everts repeatedly took steps to conceal his actions.  Notably, he used features such as Telegram's "self-destruct" timer to attempt to

conceal the fact that he had distributed child pornography.  He also developed a ruse for meeting with the OCE in person that would allow him "deniability" for his conduct by telling the OCE to schedule their meet through his fitness business so that they could meet under the guise of discussing business.

The defendant's alleged conduct here is horrendous, indicating that he poses a danger both to children in the real physical world – including multiple specific children in his social circle – as well as to unknown children who are suffering the aftermath of having images of their sexual abuse distributed online.  On a broad level, children depicted in sexually explicit images and videos are victimized at the time the images were created, and they are re-victimized each time an individual, like the defendant, views the images for their own sexual gratification. As explained by the Sixth Circuit in a child pornography case:

> ...we have numerous victims in a case like this, not one victim. Every image of a child, every image of a non-adult engaged in any type of sexual activity or any type of pose without clothing or any type of exploitation constitutes an additional case of victimizing a child. Without a demand for that type of information and that type of viewing from persons like this defendant, we don't know how many child abuse cases we could prevent. And as long as there is a demand to purchase images of child pornography, there is going to be an unending stream of child abuse of…children who are forced into these roles.

> ...every image has a child who has been exploited and abused, and that is the concern I have. It is the concern that I have when people are engaged in serially doing this, the effect it has on children throughout the world and the effect it has on their future lives.

See United States v. Miller, 665 F.3d 114, 121-122 (6th Cir. 2011)(quoting the district court) (rejecting an attack on the child pornography sentencing guidelines and highlighting the grave harm caused to the victims depicted in child pornography images and the evidence that traffickers and possessors of child pornography are the impetus for the creation of more sexual abuse of minors).

Indeed, Congress has recognized the serious nature of the offenses that this defendant is charged with, and the long-term damage that these crimes can cause, by specifying that these crimes carry a rebuttable presumption of detention.  § 3142(e)(3)(E).  The defendant is alleged to have distributed child pornography in the context of actively discussing the sexual abuse of specific boys in his social circle and sharing their images with someone whom he believed also was interested in sexually abusing these boys.  There is no combination of conditions that will protect children both online and in the physical world from the defendant's predation and this first factor weighs heavily in favor of detention.

### B. The Weight of the Evidence Against the Defendant

The weight of the evidence against the defendant is very strong and also weighs in favor of detention.  The United States is in possession of the two-month long Telegram chat conversation between the OCE and @ethaneffex, to include the child pornography images, the non-explicit images of local children, and the voice recordings sent by @ethaneffex.  That account has been tied to the defendant, Michael Everts, in multiple ways, most notably by the fact that it was Everts – and no one else – who arrived at the pre-arranged location in Washington D.C. to meet with the OCE on November 28, 2023.  In addition, information provided by Sniffies, Google, and AT&T, indicate that Michael Everts is connected to both the Sniffies account and the @ethaneffex Telegram account through his phone number, multiple email addresses, and the Q Street address in Northwest, Washington D.C.  Finally, the content of the two-month long chat with the OCE forecloses any defense of mistake, accident, or lack of intent on Mr. Everts' part.

Contrary to popular wisdom, the weight of the evidence should not uniformly be viewed as the "least important" of detention factors.  Instead, a district court has broad discretion to determine the relative weight of each of the four Bail Reform Act factors, including the weight of

the evidence against a defendant, when analyzing whether the defendant poses a danger or is a risk

of flight.  No factor is categorically of greater or lesser weight than the others.  As the Second

Circuit Court of Appeals recently observed:

> Although § 3142(g) of the Bail Reform Act lists various factors to consider, it says
> nothing about the relative weight a court should give them when deciding whether
> to release or detain a defendant. *See generally* 18 U.S.C. § 3142(g). That silence is
> unsurprising, because the weight given to each factor will inevitably vary from case
> to case, and might even vary depending on whether the inquiry relates to a
> defendant's danger or to his risk of flight. What is more, certain factors might
> interact with one another in a particular case in a way that alters a court's analysis
> of a defendant's danger to the community or flight risk.

*United States v. Zhang*, 55 F.4ᵗʰ 141, 149-50 (2ᵈ Cir. 2022).  In *Zhang*, the Second Circuit found

that the district court gave appropriate weight to the second factor – the weight of the evidence –

in determining that there was "significant evidence" that Zhang had in fact committed the charged

murder.  *Id.* at 150-51.  Affirming the district court's relative reliance on the weight of the evidence

in determining dangerousness, the court explained:

> In making a predictive assessment of the defendant's future dangerousness if
> released into the community, common sense and § 3142(g)(2) aligned with the
> district court's consideration of the strength of this evidence, especially coupled
> with the nature of the charged offense. It stands to reason that the more strongly the
> evidence indicated that the defendant committed the murder, the more likely he
> poses a danger to the community if released on bail.

*Id.*  Similarly, in considering whether the defendant poses a risk of flight, the court explained that

where "the evidence against a defendant is strong, it follows that the defendant faces an elevated

risk of conviction (and of the attendant punishment), and therefore may present an elevated risk

of flight.  *Id.* at 151-52.

The *Zhang* court's analysis holds true here, where the evidence against Everts is very

strong, suggesting both a heightened danger to the community as well as an elevated risk of flight.

The strength of the evidence strongly supports detention, as it indicates the significant risk of

16

danger posed by the defendant, as well as an elevated risk of flight to avoid accountability on very serious charges.

### C.    History and Characteristics of the Defendant

By all public accounts, the defendant has lived as a model citizen.  He is well educated, has built a local fitness business from the ground up, and has even previously served on the Mayor's Council on Physical Fitness, Health, and Nutrition.   Nonetheless, the two-month long chat conversation with the OCE in the fall of 2023 strongly suggests that the public image Everts has cultivated over time is inconsistent with reality.  Even while building a successful business and serving in a public capacity, Everts' own admissions indicate that he simultaneously sought out interactions with children for his own sexual satisfaction.  As he indicated on September 26, 2023, he "fell in love with [his] neighbor a few years back when he was 9sih.  His hottest age was 10/11…sadly he's like 15 now…still hot tho."  That Everts in this chat is referencing a neighbor boy who was only nine years old at the time he "fell in love" with the child, and who is now fifteen years old, supports the conclusion that Everts has been nourishing a sexual interest in children for at least six years, all while projecting the image of model citizen to the public.

Much is unknown about whether Everts has engaged in conduct beyond what is charged in the complaint.  Nonetheless, his own admissions demonstrate a previously unknown duplicity and suggest that part of his history and character is far more sinister than previously known.  Everts' history and characteristics counsel against release.  He has demonstrated that he is a danger to children in both the physical world and online and the United States submits that his demonstrated sexual interest in children makes him an ongoing danger to any child he may encounter, wherever that may be.

**D. The Nature and Seriousness of the Danger to Any Person or the Community**

Finally, the sexual exploitation and coercion of children presents a serious danger to the community, which results in severe mental, emotional, and physical trauma to the countless children who are victimized by offenders like the defendant and others with a demonstrated sexual interest in children.    It is this type of harm that led Congress to create the statutory presumption of detention in these cases.

That child pornography offenses are serious is a fact noted by the Supreme Court. At least as early as the landmark decision, *New York v. Ferber*, 458 U.S. 747 (1982)*,* the Supreme Court referenced numerous research materials detailing the harm to children as a result of the production and trafficking of child pornography.

> [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography."

Shouvlin, Preventing the Sexual Exploitation of Children: A Model Act, 17 Wake Forest L.Rev. 535, 545 (1981). *See also* Child Exploitation 292 ("[I]t is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions"); Note, Protection of Children from Use in Pornography: Toward Constitutional and Enforceable Legislation, 12 U.Mich.J. Law Reform 295, 301(1979)(interview with child psychiatrist) ("The victim's knowledge of publication of the visual material increases the emotional and psychic harm suffered by the child"). 458 U.S. 758, n.9.

Moreover, as the Eastern District of New York has found:

> ...the issue is not only defendant's potential abuse of children and his interaction with children if on bail, but also his ability, if he is released on bail, to attempt to

possess additional child pornography, or to communicate and interact with (via email, internet, or phone) others involved in the possession, sale, and distribution of child pornography or other sexual abuse of children, which would also create a clear danger by facilitating the criminal and dangerous exploitation of children by other individuals.

*United States v. Reiner*, 468 F.Supp.2d 393, 397 (E.D.N.Y. 2006). The *Reiner* court further found that there were no conditions in that case that could reasonably assure the safety of the community "[i]n this day and age, with devices such as cellphones, Blackberries, and laptops..." Id. at 399; *see also United States v. Blankenship*, 2008 WL 1925137 (S.D.W.Va. April 29, 2008) (S.D.W.Va. April 29, 2008)(unpublished)(noting the ease of accessing the internet by means of various devices and stating "[t]he Court finds that the evidence clearly and convincingly establishes that, confined to his home and electronically monitored, defendant would not be prevented from obtaining the means to access the internet and attempting again to obtain child pornography and in this poses a danger to children and the community"); *United States v. Doyle,* 2007 WL 1097844, *1 (W.D.Va. 2007)(finding danger of future offenses "especially considering that pornographic images of children are widely available on the internet and can be easily accessed by a personal computer"), conviction rev'd on other grounds, 650 F.3d 460 (2011).

Given the risks that the defendant poses to children both in the physical world and online, there are no conditions or combination of conditions that will reasonably keep children in the community safe and assure his appearance if he is released. As such, this factor weighs heavily in favor of detention.

## **CONCLUSION**

For all of the reasons set forth above, a consideration of the evidence in this case and the applicable statutory factors compels the conclusion that the defendant should be detained pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar. No. 415082


_____*/s/ Jocelyn Bond*_____
Jocelyn Bond
D.C. Bar No. 1008904
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Telephone: (202) 809-0793
Email: Jocelyn.Bond@usdoj.gov